Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4141 | DATE | 3/9/2000 |
| CASE TITLE | SPR, Inc. vs. Fletcher | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Fletcher's motion to transfer under 28 U.S.C. §1404(a) is granted, and this case is transferred to the Northern District of Oklahoma. Fletcher's motion to dismiss for lack of personal jurisdiction is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 10 2000 date docketed | 12 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| JD | courtroom deputy's initials | 00 MAR -9 AM 3:24 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPR, INC., )
 )
    Plaintiff, )
 ) 99 C 4141
v. )
 ) Judge George M. Marovich
MICHAEL J. FLETCHER, )
 )
    Defendant. )

MEMORANDUM OPINION AND ORDER

Plaintiff SPR, Inc. ("SPR") has filed this action against its former employee Defendant Michael J. Fletcher ("Fletcher"), seeking to rescind a Separation Agreement and General Release entered into by the parties and to recover alleged damages. Fletcher now moves to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. Alternatively, Fletcher seeks a transfer of venue to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a) or § 1406(a). For the reasons set forth below, this case is transferred to the Northern District of Oklahoma.

BACKGROUND

SPR is a publically traded Delaware corporation with its principal place of business in Oak Brook, Illinois. SPR also has

1

branch offices in Tulsa, Oklahoma, Milwaukee, Wisconsin, and Dallas, Texas. SPR is in the business of providing information technology consulting services to its customers.

Fletcher was hired by SPR in Chicago, Illinois in 1986 as a recruiter. He was later transferred to SPR's Tulsa, Oklahoma branch office in 1988 and has been a resident of Oklahoma since that time. Fletcher worked in the Tulsa office from 1988 until his employment was terminated in September 1998. In 1996, Fletcher became a officer and director of SPR.

In June 1997, Fletcher entered into a Management Employment Agreement with SPR. This Employment Agreement contained, among other things, noncompetition, nonsolicitation and nonenticement provisions.

In early 1998, SPR became aware of irregularities in expense reports submitted by Fletcher. An investigation revealed that Fletcher had falsified certain expenses, including charging his personal expenses to SPR. Fletcher ultimately admitted the impropriety of the phony expenses and agreed to resign as a director of SPR. Fletcher also reimbursed SPR for certain falsified expenses that he had been paid by SPR.

On September 3, 1998, Fletcher was informed by SPR's Chief Executive Officer, Robert M. Figliulo ("Figliulo"), during a

2

meeting that took place at the Adam's Mark Hotel in Tulsa, that it was time for Fletcher to leave SPR. (Fletcher Aff. ¶ 8.) Figliulo brought a draft separation agreement to this meeting on his laptop computer. Figliulo revised the draft later that day and ultimately gave it to Fletcher before leaving Tulsa. In connection with the negotiation of Fletcher's Separation Agreement and General Release ("Separation Agreement") with SPR, Fletcher allegedly represented to SPR that he would not compete with it or otherwise harm it in Tulsa upon his termination of employment. (Compl. ¶ 17.)

On September 10, 1998, Figliulo returned to Tulsa and additional negotiations concerning the Separation Agreement took place there with Fletcher. (Fletcher Aff ¶ 8.) Thereafter, between September 10, 1998 and October 9, 1998, Fletcher and Figliulo had several telephone conversations to discuss the terms of the Agreement and several drafts of the Agreement were exchanged by fax or e-mail while Fletcher was in Oklahoma and Figliulo was in Illinois. (Id. at ¶¶ 10-11.)

On October 9, 1998, SPR and Fletcher executed the Separation Agreement under which Fletcher promised, among other things, not to disparage SPR "in any way." (Compl., Ex. B. ¶ 5.) Fletcher signed the Separation Agreement in Tulsa. (Fletcher Aff. ¶ 8.)

3

After Fletcher's employment was terminated, SPR became aware that Fletcher had been in contact with several SPR employees and became concerned that Fletcher may be involved in business in competition with SPR. SPR advised Fletcher's attorney of its concerns and informed him that the lump sum payment of approximately $81,000 due to Fletcher under the Separation Agreement would be withheld if Fletcher was contacting SPR's employees for business purposes. Fletcher's attorney advised SPR that Fletcher was simply meeting with SPR employees as "friends." In December 1998, SPR paid Fletcher approximately $81,000 under the Separation Agreement.

In February 1999, SPR learned that Fletcher had formed a business in Tulsa called StoneHenge Partners. StoneHenge Partners markets itself as in the business of providing information technology consulting services and has its offices in the same building as SPR's offices. Through his new company, Fletcher has competed with SPR in Tulsa and has hired at least 14 former SPR employees. Fletcher also allegedly has made and is continuing to make disparaging remarks about SPR to its customers and others and has published such remarks on the Internet. SPR further contends that Fletcher has directly solicited former SPR customers and is now doing business for some of these customers

4

in Tulsa. Fletcher does not advertise or solicit business in Illinois, employ any individuals in Illinois, own any real property in Illinois, or maintain any bank accounts in Illinois. (Fletcher Aff. ¶ 16.)

In the present action, SPR seeks recission of the Separation Agreement on two grounds: (1) the Agreement was procured by Fletcher through fraud in that SPR reasonably relied on Fletcher's material misrepresentations that he would not compete with or otherwise harm SPR in Tulsa after his employment was terminated (Count I); and (2) Fletcher failed to substantially perform under the Agreement by disparaging SPR after his termination (Count II).[1]

Fletcher now moves to dismiss the action for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the action to Oklahoma. Because this Court finds that this case should be transferred to the Northern District of Oklahoma under 28 U.S.C. § 1404(a), this Court need not address SPR's personal jurisdiction arguments. See, e.g., First Health

---

[1] SPR has also filed suit in Oklahoma state court against Fletcher, his new company, and eight former SPR employees alleging, inter alia, theft of trade secrets, conspiracy, tortuous interference, and misappropriation of corporate opportunity. (Fletcher Aff. ¶ 13.)

5

Group, Corp. v. Sanderson Farms, Inc., 2000 WL 139474, at *1 (N.D. Ill. Jan. 31, 2000) (considering motion to transfer prior to motion to dismiss for lack of personal jurisdiction); Ty Inc. v. Beanie World, Inc., 1999 WL 782092, at *1 (N.D. Ill. Sept. 27, 1999) (same); Alliance Gen. Ins. v. Deutsch Kerrigan & Stiles, L.L.P., 1999 WL 637205, at *1 (N.D. Ill. Aug. 16, 1999) (same).

DISCUSSION

I. Venue Under 28 U.S.C. § 1391(a)

When venue is challenged, as it is here, the plaintiff bears the burden of establishing that venue is proper in the forum state. Emjayco v. Morgan Stanley & Co., 901 F. Supp. 1397, 1400 (N.D. Ill. 1995). In resolving such an issue, a court may examine facts outside of the complaint, but must resolve any factual conflicts in the parties' submissions in favor of the plaintiff. See, e.g., Nagel v. ADM Investor Servs., Inc., 995 F. Supp. 837, 843 (N.D. Ill. 1998).

SPR asserts that venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(a)(2). Under that section, "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

6

28 U.S.C. § 1391(a)(2). The commentary to that section notes that "there may be several districts that qualify as a situs of such 'substantial' activities . . . . If the selected district's contacts are 'substantial', it should make no difference that another's are more so, or the most so." See 28 U.S.C. § 1391(a)(2), Commentary by David D. Seigel.

Fletcher contends that it cannot be said that a substantial part of the events giving rise to the claim occurred in Illinois because the termination of employment, Figliulo's presentation of the draft Agreement, the negotiation of the significant terms of the Agreement, and Fletcher's alleged misrepresentation, all occurred in Tulsa. SPR, on the other hand, argues that Fletcher's contacts with Illinois regarding the negotiation and performance of the Separation Agreement establish that more than a sufficient part of events occurred in Illinois. In particular, SPR insists that although Figliulo and Fletcher had "initial conversations" concerning the "general" terms of the Separation Agreement in Tulsa, the "actual negotiations" of the terms of Agreement and the exchange of drafts of the Agreement occurred over the telephone and by fax and e-mail while Figliulo was in Illinois and Fletcher was in Oklahoma. (See Figliulo Aff. ¶¶ 9-11.) According to SPR, the relevant events surrounding the

7

Separation Agreement took place both in Illinois and Oklahoma.

As noted about, the Court must resolve conflicts in the evidence in favor of SPR. Accordingly, construing the evidence in favor of SPR, the Court finds that while a substantial amount of activities may also have occurred in Tulsa, the events that took place in Illinois rise to the level of "substantial" under 28 U.S.C. § 1391(a)(2) (although, at best, just barely). Thus, Fletcher's motion to dismiss for improper venue is denied.

II. Motion to Transfer

An action may be transferred under 28 U.S.C. § 1404(a) where the moving party demonstrates that (1) venue is proper in the transferor court, (2) venue is proper in the transferee court, and (3) the transfer is for the convenience of the parties and witnesses and in the interest of justice. Vandeveld v. Christoph, 877 F. Supp. 1160, 1165 (N.D. Ill. 1995). The weight to be accorded to each of these factors is left to the sound discretion of the Court. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). Here, because it is undisputed that venue is proper in Tulsa, only consideration of the third element is necessary, i.e., whether a transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.

A.  Convenience of the Parties and Witnesses

When evaluating the convenience of the parties and witnesses, a court should consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. See College Craft Cos., Ltd. v. Perry, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995).

A plaintiff's choice of forum generally is entitled to substantial weight under § 1404(a). Symons Corp. v. Southern Forming & Supply, Inc., 954 F. Supp. 184, 186 (N.D. Ill. 1997). However, the plaintiff's preference has minimal value where, as here, "the conduct and events giving rise to the cause of action did not take place in the selected forum." Carter v. Clark Material Handling Co., 1998 WL 89244, at *2 (N.D. Ill. Feb. 17, 1998). In this case, SPR's chosen forum is Illinois. However, from the evidence submitted by the parties, it appears that the only relevant contact Illinois has with the underlying cause of action is that SPR is headquartered there and that some negotiations took place over the telephone and the computer while Plaintiff was in Illinois and Defendant was in Oklahoma. Therefore, the fact that Illinois is Plaintiff's chosen forum is

9

entitled to some, but not substantial, deference.

As for the second factor, it is clear that the majority of underlying events in this case occurred in Oklahoma, including: the termination of Fletcher's employment, the initial (and perhaps the significant) negotiations of the Agreement, the signing of the Agreement, the alleged misrepresentation, and the alleged disparagement. Accordingly, the situs of the material events relevant to the underlying cause of action factor weighs heavily in favor of Oklahoma.

The next factor--the relative ease of access to sources of proof--is really about the conveniences of witnesses here as this action will likely focus on the testimony of relevant individuals, and not documents. However, to the extent that records become important, the Court is satisfied that either party can easily bring to the district those documents that are not there already. Chemical Waste Management v. Sims, 870 F. Supp. 870, 876 (N.D. Ill. 1994). Therefore, this consideration neither militates for or against transfer.

The convenience of the witnesses is often characterized as the most important factor in a decision to transfer. See, e.g., Brando Apparel Group, Inc. v. Quitman Mfg. Co., 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999). In analyzing this factor, a court

should not limit its investigation to a review of which party can produce the longer witness list . . . but should look to the nature and quality of the witnesses' testimony with respect to the issues in the case." Vandeveld, 877 F. Supp. at 1168. In his submitted affidavit, Fletcher has identified approximately 20 individuals in addition to himself--all who reside in Oklahoma--who could offer testimony pertinent to the fraudulent inducement allegations of the complaint, specifically, Fletcher's plans and the circumstances and timing of Fletcher's decision to form StoneHenge partners. (See Fletcher Aff. ¶¶ 11-13.) Further, it appears that the majority of any allegedly disparaging conversations that Fletcher had occurred in Tulsa, presumably to SPR's Tulsa customers. Therefore, the individuals who would testify about any such conversations are located in Tulsa. On the other hand, SPR identifies five Illinois residents who could testify that Fletcher represented that he would not compete with SPR, that those statements were made in the context of negotiating the Separation Agreement, and that SPR relied on these representations in entering into and performing under that agreement. (See Figliulo Aff. ¶ 15.) Considering the significance of the testimony of the witnesses identified by both sides, as well as the costs and difficulty involved in obtaining

11

the attendance of witnesses, the Court concludes that, on balance, Oklahoma is a more convenient forum for the witnesses.

As for the convenience of the parties factor, the court should consider the parties' respective residences and their ability to bear the cost of litigation in a particular forum. Habitat Wallpaper & Blinds, Inc. v. K.T. Scott, Ltd. Partnership, 807 F. Supp. 470, 474 (N.D. Ill. 1992). Here, SPR is headquartered in Illinois and Fletcher resides in Oklahoma. Therefore, SPR argues that transferring the action to Oklahoma would merely shift the inconvenience from one party to the other. The Court, however, believes that litigation for SPR in Oklahoma would be less inconvenient than litigation for Fletcher in Illinois. Significantly, not only does SPR have offices in Tulsa but it has already demonstrated its willingness to come to Oklahoma by instituting related litigation there against Fletcher. Accordingly, this factor favors transfer.

B. The Interest of Justice

The interests of justice analysis concerns public interest factors such as the "efficient administration of the court system." Coffey, 796 F.2d at 221. Public interest factors that may warrant transfer include the court's familiarity with applicable law, and the desirability of resolving controversies

12

in their locale, the relation of the community to the occurrence at issue in the litigation, and the congestions of the respective court dockets and the prospects for an earlier trial. Symons, 954 F. Supp. at 187. The administration of justice is served more efficiently when the action is litigated in the forum that is "closer to the action." Paul v. Land's End, Inc., 742 F. Supp. 512, 514 (N.D. Ill. 1990).

In this case, transfer will promote the interests of justice for a couple of reasons. First, as discussed above, Oklahoma is undoubtedly the forum with the more significant contacts to the litigation. Moreover, statistical evidence suggests that the parties would receive a speedier resolution of this case in Oklahoma. According to statistics from the most recent Judicial Caseload Profile Report issued by the Administrative Office of the United States Courts (covering the court year ended September 30, 1998), the median time from filing to trial in the Northern District of Oklahoma is 15 months, with only 2.1% of the civil cases there being over three years, versus corresponding figures of 25 months and 8.5% in this district.

C. Resolution

In sum, after careful consideration of all of the Section 1404(a) factors, this Court concludes that the sum of the

13

conveniences and the interest of justice strongly favors transferring this case to the Northern District of Oklahoma under 28 U.S.C. § 1404(a).

CONCLUSION

For the foregoing reasons, Fletcher's motion to transfer under 28 U.S.C. § 1404(a) is granted, and this case is transferred to the Northern District of Oklahoma. Fletcher's motion to dismiss for lack of personal jurisdiction is denied as moot.

ENTER:

_____
GEORGE M. MAROVICH
UNITED STATES DISTRICT JUDGE

DATED: 3/7/00